**CHRISTENSEN et al. v. UNITED STATES.**

(Circuit Court of Appeals. Ninth Circuit November 15, 1926. Rehearing Denied December 20, 1926.)

No. 4917.

1. **Criminal law ⊜➡726—Remarks by prosecuting attorney as to jury bribe held not reversible error; being reply to adversary's statement.**

Remarks by prosecuting attorney, concerning alleged attempt to bribe juror, *held* not re-versible; the part applicable to defendant being brought out by counter charges by defendants' counsel.

2. **Criminal law ⊜➡633(1)—Denial of motion for mistrial for proceedings relating to jury bribe held discretionary.**

Denial of a motion for mistrial because of proceedings relating to an alleged attempt to bribe a juror and newspaper publication of the same, *held* within the discretion of the trial judge, and not error, where the jury were instructed to give the matter no consideration.

3. **Criminal law ⊜➡726—Retaliatory remarks of counsel held not reversible error.**

Improper remarks by prosecuting counsel will not constitute reversible error, when made in response to like remarks by defendant's counsel.

4. **Conspiracy ⊜➡43(12)—All overt acts charged need not be proved.**

A conviction for conspiracy is not invalidated because defendants were acquitted of overt acts charged as substantive offenses, where other overt acts alleged and proved were not charged as substantive offenses.

In Error to the District Court of the United States for the District of Oregon; Charles E. Wolverton, Judge.

Arthur Christensen and others were convicted on a charge of conspiracy to violate the National Prohibition Act, and they bring error. Affirmed.

Elton Watkins and Johnston Wilson, both of Portland, Or., for plaintiffs in error.

George Neuner, U. S. Atty., Forrest E. Littlefield and J. O. Stearns, Jr., Asst. U. S. Atty., all of Portland, Or.

Before RUDKIN, Circuit Judge, and DIETRICH and KERRIGAN, District Judges.

KERRIGAN, District Judge. This case comes before us upon a writ of error to review a judgment of conviction of conspiracy to violate the National Prohibition Act (Comp. St. § 10138¼ et seq.).

The indictment charges that the defendants were qualified and acting prohibition officers of the state of Oregon, and conspired and agreed among themselves that they would apprehend persons found violating said act, and, instead of detaining them and preferring charges against them, would demand and receive money from them, and would seize for their own use any intoxicating liquor illegally possessed by such persons, and would free and release and give immunity to such persons; further, that the defendants would connive and negotiate with persons engaged in the illegal manufacture of intoxicating liquor, and would promise and agree not to ar-

rest them, provided and in the event such persons paid to defendants certain sums of money for protection and freedom from arrest, and that they would undertake to warn such persons of any impending raid or arrest which might threaten them, to the end that such persons would be enabled to carry on their unlawful enterprise.

There is no claim that the evidence is insufficient to support the verdict, nor could such a claim well be made, for the evidence abundantly sustains the verdict of conviction. [1] One of the assignments of error relates to an attempt to bribe one of the members of the jury sitting on the case; the claim being made that the manner in which it was brought to the notice of the jury was highly prejudicial to the defendants and prevented them from having a fair and impartial trial.

The facts concerning this matter are that, on or about the 8th day of the trial one Paul Bradshaw, through an intermediary, had attempted to bribe James E. Lawrence, one of the jurors in the case. Lawrence at once called the matter to the attention of the district attorney. Thereafter the court was advised of what had happened, and, realizing that it was proper that the jurors should be apprised of their duty when confronted with such an occurrence, asked the district attorney if he had any matter to which he desired to call the court's attention; whereupon the district attorney related what had occurred as just stated, adding that he had filed a complaint and caused a warrant to issue for the arrest of Bradshaw, who had been arrested and was then in custody or had been released on bond. At this point in the proceedings counsel for the defendants asserted that he had been informed by an attorney, who was willing to come into court and testify, that one Roy Moore, a witness for the government, was hostile to the defendants, and that the attempted bribery of a juror was a trick by Moore to injure the defendants and prejudice their case before the jury; that Bradshaw and Moore were intimates; and that the defendants did not know Bradshaw. To this and more along the same line the district attorney replied that his office had no contact with Bradshaw, and that, if any attempt had been made to bribe a juror, it had not been made by the government, that he had seen counsel for the defendants and Bradshaw in conversation together in the courtroom, and that such counsel had represented Bradshaw after he was arrested on the previous evening.

In the statement by the district attorney, first made, nothing had been said from which the jury could infer that the attempted corruption of the juror was for the benefit of the defendants; but their counsel were not satisfied with what had been said on the subject, and, instead of contenting themselves with disclaiming on behalf of their clients all connection with the matter, made charges against Roy Moore, one of the principal witnesses for the government, without any foundation therefor so far as the record shows—a course calculated to injuriously affect the government's case. It was then that the district attorney challenged the correctness of the statement of counsel, and, as we have seen, answered in kind.

[2] It is plain that the remarks of the prosecuting officer were provoked by the accusation of counsel for the defendants, for which reason defendants cannot be heard to complain. This was probably the view taken by defendant's counsel at the time, for no exception was noted to the statement of the district attorney, nor was it assigned as misconduct. But the next day the Morning Oregonian, a newspaper of large circulation in the state of Oregon, published an account of the attempted bribery, and two days later the defendants moved the court, out of the presence of the jury, for an order granting a mistrial on account of said attempted bribery and the published reference thereto in said newspaper. This motion was denied.

The question whether or not the attempted bribery of the juror and the published account there injuriously affected the defendants was one resting largely in the sound discretion of the trial court; and we think the court did not abuse its discretion in denying the motion to dismiss the jury on that ground. The newspaper account was a bare narrative of the occurrence, contained nothing which appealed to the passion or prejudice of its readers, and, so far as the incident itself was concerned, the jury was admonished by the court to dismiss the matter from their minds and to give it no consideration, and in effect that they were bound to decide the case on the evidence received at the trial and upon that alone, subject to the instructions of the court. As was stated by the venerable trial judge when referring to this matter in the order overruling a subsequent motion for a new trial, "In this day and age, intelligent men, with honest motives, do not readily yield to the promptings of caprice, and courts may confidently depend upon their unbiased judgment when properly instructed touching their duty in exigencies of the character here impending."

Another of the principal assignments of error relates to the alleged misconduct of the prosecuting officer in the course of the trial.

James Stayton had been served with a subpœna to attend as a witness on behalf of the prosecution, but disappeared on the eve of the trial. During the trial on various occasions counsel for the defendants, by questions put to the witnesses, insinuated that officers of the government were responsible for such disappearance. Finally the district attorney retaliated by stating that, if the defendants would produce Stayton, the government would place him on the stand. In this connection the defendants also complain that the district attorney again brought the incident of the attempted bribery before the jury.

During the direct examination of a witness called for the defendants, counsel asked him if he knew Bradshaw—who, it will be remembered, was the person charged with the attempted bribery—and the witness answered that he did not. Upon cross-examination, he was again asked by the district attorney if he did not know Bradshaw, there being included in the question, evidently for the purpose of identification, the statement that Bradshaw during the trial had been sitting behind counsel for the defendant and had been in consultation with them. To this question counsel's only objection at the time was that it included the statement that they had been in consultation with Bradshaw, which they denied, but tacitly admitted that he had been a visitor in the courtroom and had sat where designated behind counsel for the defendants and on several occasions talked with one or other of them. Counsel not only at the trial, but in their briefs, brought in much extraneous matter. The trial was at times acrimonious, so much so that the court in its instructions in part said: "It has come within your observation that counsel in this case during the trial have not always been in accord in the presentation of their evidence, and have resorted to somewhat sarcastic and uncomplimentary remarks touching the other's conduct and method of procedure. I call your attention to this to advise you that you should not under any persuasion let these matters influence your judgment and verdict in the final determination of this cause. You will simply set aside those bickerings and give them no consideration whatever."

[3] Of course the district attorney, while charged with the duty of prosecuting offenders against the law, ought to be fair and impartial; but it frequently happens that defendants' counsel think they are entirely absolved from pursuing a like course, which provokes retaliation on the part of the prosecution. Allowance must be made for human nature, and much attributed to the zeal which rightly characterizes both those engaged in the defense and the prosecution of a case. It would seem that here the second reference to the Bradshaw incident, about which complaint is made, was manifestly the fault of counsel for the defendants; and so, with reference to the matter of the witness who had disappeared, the retort of the prosecuting officer was prompted by a sense of fair play. It must be true that improper remarks of counsel will not constitute ground for reversal of a judgment when made in response to remarks of like nature by opposing counsel, especially when, as here, the court in proper time promptly admonishes the jury to disregard the controversy. "If the defendant wishes to invoke the rule of confinement to the record, they themselves must keep within the record. When they voluntarily go outside, they at least invite, if they do not render it necessary, that the prosecution should follow." Dimmick v. U. S., 135 F. 257, 70 C. C. A. 141.

[4] It is urged that the verdict is fatally defective, in that the defendants were found guilty of conspiracy, and at the same time not guilty on all the counts charging overt acts as substantive offenses. This assignment is wholly without merit, for the reason that certain of the overt acts alleged were not charged as substantive offenses, and as to these no inconsistency can possibly exist. Worthington v. U. S. (C. C. A.) 1 F.(2d) 154; Morris v. U. S. (C. C. A.) 7 F.(2d) 785.

There are other assignments of error, some relating to the admission of evidence, others concerning instructions given to the jury, none of which have sufficient merit to warrant a reversal of the judgment. The instructions were full and fair, and show evidence of painstaking care on the part of the trial judge, who in a protracted trial and in ruling on the antagonistic contentions of counsel at no time lost sight of the rights of the defendants accorded them by our Constitution and laws.

The judgment is affirmed.