**BRASWELL et al. v. UNITED STATES.**

No. 13995.

United States Court of Appeals Fifth Circuit.

Dec. 17, 1952.

Charles W. Tessmer, Dallas, Tex., for appellants.

Lester L. May, Asst. U. S. Atty., Dallas, Tex., Frank B. Potter, U. S. Atty., Fort Worth, Tex., for appellee.

Before HUTCHESON, Chief Judge, and BORAH and RIVES, Circuit Judges.

RIVES, Circuit Judge.

Seven defendants were convicted of having unlawfully acquired and obtained through some form or manner of transfer

marihuana without having paid the tax on the transfer thereof. 26 U.S.C.A. § 2593(a). The conviction of the three appellants and of three of their co-defendants was based upon Count 1 involving 36 grains of marihuana. A seventh defendant, one Willie Frank Smith, was convicted under Count 2 involving 4 grains of marihuana.

Appellants rely for reversal upon contentions which may be discussed under five headings: (1) sufficiency of the indictment; (2) sufficiency of the evidence; (3) the admission of prejudicial evidence; (4) the failure of the court to grant a mistrial for prejudicial occurrences in the Court Room in the presence of the jury; (5) prejudicial comments of the Assistant United States Attorney and of the Court.

■ (1) The motion to dismiss Count 1 of the indictment claimed that its allegations were (a) repugnant, and (b) duplicitous. The claim of repugnancy is based upon the assertion that "it would be physically impossible for the six named defendants to possess the 36 grains of marihuana." It is the acquisition and obtaining without having paid the special tax that is charged. The fact of possession is only presumptive evidence of guilt. 26 U.S.C.A. § 2593(a). All of the defendants who participated in the same unlawful act could be charged in one count. Rule 8(b) of Federal Rules of Criminal Procedure, 18 U.S.C.A. Count 1 simply charges that the six defendants committed a single offense, and its allegations are not repugnant.

Appellants ingeniously argue that the count "might be interpreted as charging the six named defendants, including the appellants, with the individual possession of 36 grains of marihuana each and thus Count 1 of the Indictment would be duplicitous in that it would charge six separate offenses * * *." We think that the words employed present to the common understanding a single charge, and that the count cannot be held bad on the ground of duplicity. See Millard v. United States, 5 Cir., 148 F.2d 154.

■ (2) Eight people were present in a tourist cabin at the time of the raid. One escaped. A marihuana cigarette was found on the person of defendant Smith, and the defense theory was that Smith was the only guilty party. The officers could see anyone entering or leaving the cabin from their position in the adjoining cabin where they had been for about forty-five minutes before the raid. The officers smelled marihuana smoke which came through an open window and door of the cabin occupied by the defendants. They heard conversation going on in said cabin referring to marihuana in terms used by addicts, such as "roach", "stash", and "stick". After arresting the seven defendants, in addition to the marihuana cigarette found on the defendant Smith, the officers found another marihuana cigarette on the floor of the cabin, a Pall Mall cigarette package containing a marihuana cigarette on the cabin floor, a Prince Albert tobacco can containing portions of marihuana on the floor behind an overstuffed chair, four packages of cigarette papers, a paper sack containing some loose marihuana, found in the bathroom of the cabin, ten marihuana "roaches", which are unburned parts of marihuana cigarettes, found in various places inside the cabin, two marihuana cigarettes found lying on the ground just outside the cabin. The hour of the raid was 2:00 A.M. None of the defendants had paid the federal tax on the transfer of marihuana. The jury might reasonably have concluded from the evidence that all of the defendants were participating in a marihuana party. The court properly denied the appellants' motions for directed verdicts of acquittal.

■ (3) The conversations coming from the cabin occupied by the defendants, though the officers could not identify the voices, were admissible, we think, not as hearsay evidence of the truth of the statements, but as circumstantial evidence of the guilty possession of marihuana. See 20 Am.Jur., Evidence, Sec. 457, p. 404. The attempted flight of the appellant Grubbs was admissible, but should have been confined to him alone. 11 Am.Jur., Conspiracy, Sec. 41, p. 574, Notes 6 and 7. Other objections to evidence need not recur on another trial, and discussion of them is not necessary.

■ (4) and (5) The more serious questions are whether the court erred in refusing to grant a mistrial because of certain occurrences in the courtroom and whether certain comments of the court and of the Assistant United States Attorney, in the presence of the jury, were so prejudicial as to constitute reversible error.

During the first day of the trial after the Government had rested its case, defendant Bobby Lee Hoffman assaulted and struck the United States Marshal in the presence of the jury, and the defendant Smith at the same time arose as if to assist Hoffman in the assault, whereupon he was caught and forced to the floor of the courtroom by several court attendants and police officers. By order of the court, Hoffman and Smith were taken from the courtroom and later returned in handcuffs. Counsel for appellants moved for a mistrial based on these alleged prejudicial occurrences before the jury as follows:

"Mr. Tessmer: If your Honor please, I now move the Honorable Court to withdraw the jurors because of the prejudicial occurrence, the uncalled for occurrence that has occurred here before this jury, and I move on the grounds that it would be so prejudicial, Your Honor, to the rights of these defendants who have conducted and deported themselves as they should in the Court, that they could not possibly secure a verdict that would be just and fair to them, because of this prejudicial occurrence that occurred in the presence of the jury trying, who are now trying them.

"I make that on behalf of the defendant Grubbs, defendant Miller, defendant Braswell, defendant Enos, defendant Myers, Your Honor.

"The Court: I don't think we should necessarily throw away the trial, we have the jury here, that is an understanding group of men, and I will instruct you gentlemen, that after the misconduct of these men, after the trial is all over, the Court will decide and weigh what ought to be done. As to the guilt or innocence of the

other parties that did not participate in the assault on the officer here in the Courtroom, you will not weigh that against the other defendants in the trial as any evidence, or any circumstance.

"Mr. Tessmer: We except to the ruling on the motion.

"The Court: All right."

Shortly after the trial was resumed, and while Patricia Ruth Enos, one of the defendants, was testifying, the United States Attorney asked her the following questions on cross-examination:

"By Mr. May:

"Q. You say you are pregnant? A. Yes, sir.

"Q. And you are not married? A. No, sir.

"Q. Who is the father of your child?

"Defendant Myers: I am. * * *

"Mr. May: Your Honor, will you instruct the defendant here to remain silent while I am questioning the witness on the stand?

"The Court: All right, keep quiet over there.

"Mr. May: That is all.

"Mr. Tessmer: Your Honor, we again ask you to withdraw the jurors, because of these prejudicial questions and answers elicited by counsel here * * *.

"The Court: I will first instruct the jury, and then I am going to retire them.

"Gentlemen, we have had a turbulent situation here in which the officers of the Court have been assaulted, and the Marshal has been assaulted here in the Courtroom. I don't think the young man was at himself when he did it, I think he, and possibly others, maybe the other just before him, are under the influence of the marihuana weed, and I am going to ask you to retire on out of the Courtroom, and you will be excused until 9:30 in the morning, and at which time you will be back."

As the jury was filing out of the courtroom one of the defendants, Lila Ruth Miller, attempted to take from her purse two yellow capsules and swallow them, but she was grabbed by two police officers and the two yellow capsules were extracted by force from her mouth, although one of the police officers was bitten on the finger in the process.

The following morning when the trial was resumed counsel for appellants again renewed his motion for a mistrial on the ground of the alleged prejudicial occurrences, and also on the ground of the widespread publicity that had been given to the occurrences on the radio and in the newspapers while the jury had been permitted to separate overnight. The Court refused to grant a mistrial but commented to the jury as follows:

"The Court: I think that we are going to instruct the jury not to be influenced—we have already done so, we will instruct the jury not to be influenced by anything that happened in the Court, you have all seen the case of a man doing something when he is drunk on whisky. Men can get drunk on more things than whisky. What occurred here in the Courthouse yesterday was manifestly due to a state of intoxication on the part of some of the people, and that being true, you cannot punish them for that, and should not.

"And, you will only consider the evidence that is offered as to what happened out there that night."

Earlier in the trial the Assistant United States Attorney, while cross-examining the defense witness Smith, asked him the following questions:

"Q. Have you been drinking anything today? A. No, sir.

"Q. Have you been smoking anything? A. No, sir.

"Mr. May: That is all.

"Mr. Tessmer: Your Honor, we object to that kind of prejudicial questioning, has he been drinking, I think this is all—

"Mr. May: I think his testimony shows he ought to be drinking.

"Mr. Tessmer: Your Honor, we object to the opinion here of the District Attorney in front of the jury here, about what this witness ought to do."
The Court then commented as follows:

"I might say to you, counsel, just how far those things could go, standing right here where you are, one day, we had a woman defendant here for this trouble, and she said she had quit and was well of it, and not to send her off, and I said, 'You are drunk now.' So I was doing the same thing the District Attorney is doing. * * *"

Appellants contend that because of the quoted occurrences and comments of the court and of the Assistant United States Attorney during the trial they were denied their right to a fair and impartial trial by jury as contemplated by the Sixth Amendment of the Federal Constitution, as well as deprived of their liberty without due process of law under the Fifth Amendment.

The Government insists that the court did not err in refusing to grant a mistrial after the alleged prejudicial occurrences; that the errors, if any, were cured by the court in its final charge to the jury as follows:

"One other thing that we will mention more fully in the charge, you observed in this Courtroom yesterday an unfortunate occurrence of some of the defendants making a physical and violent attack upon the United States Marshal while he was sitting here in the Courtroom. The defendants' counsel has properly moved the Court to enter a mistrial, the motion is based upon the theory that that occurrence would prejudice your minds against the defendants in the case, and it is, perhaps, calculated so to do.

"The Court has denied said motion, and he has denied it on this theory, that you are jurors, and men of that strength of character, and that regard for your oath in adhering to the law, as

given in the charge, that you will disregard entirely and wholly, in making up your verdict, the things that have occurred under your eyes here in this Courtroom.

"An assault upon an officer in the discharge of his duty is a crime, but you must not convict a man for that crime when he is on trial for another, and we are relying upon you, and we have faith to believe, and do now find that you have the ability to disregard those things and try just as the next jury might try this case. And therefore, we are asking you so to do."

Appellants Braswell and Grubbs were not participants in any of the misconduct or violence that took place in the courtroom, and the government argues that the occurrences "did if anything, *benefit* them before the jury." That argument is not sustained by the jury's verdict, and is wholly unconvincing to us. The defendants were all together in the cabin. The misconduct of some of them on the trial most probably prejudiced them all in the minds of the jury.

■ The right to trial by jury comprehends a fair determination of the guilt or innocence of the accused, free from bias, passion or prejudice. See United States v. Haupt, 7 Cir., 136 F.2d 661. And where error occurs which, within the range of a reasonable possibility, may have affected the verdict of a jury, appellant is not required to explore the minds of the jurors in an effort to prove that it did in fact influence their verdict. See Little v. United States, 10 Cir., 73 F.2d 861, 866, 96 A.L.R. 889; Cf. Kotteakos v. United States, 328 U.S. 750, 763–765, 66 S.Ct. 1239, 90 L.Ed. 1557.

■ As to the appellant Hoffman, the Government argues that under the decision in Christensen v. United States, 9 Cir., 16 F.2d 29, he has no right to complain, since he initiated the violent acts by striking the United States Marshal after the Government· had presented its case and rested. Ample power rested with the court to punish Hoffman for contempt, which was done. Denial of a fair trial is beyond the range of such punishment. It did not appear that Hoffman's violence was deliberately staged for the purpose of inducing a mistrial, nor did it appear that he was connected with the subsequent misconduct of other co-defendants. Even under the most trying circumstances, every needed power of the court must be exerted to guarantee and make effective a right of such transcendent importance as the right to a fair trial.

Further, the comments of the court, while made with the best of intentions to prevent further prejudice of the defendants in the minds of the jury, actually expressed the court's belief that Hoffman and other unnamed defendants were under the influence of marihuana. In a case where they were charged with unlawfully acquiring and obtaining marihuana, such comments were bound to be highly prejudicial. Jurors properly bear great respect for the Judge conducting the trial, and his every word and act are calculated to have a strong influence upon them. Quercia v. United States, 289 U.S. 466, 470, 53 S.Ct. 698, 77 L.Ed. 1321. See United States v. Levi, 7 Cir., 177 F.2d 833. In entire fairness, the judge later certified, "that there was no evidence that the defendant James Wade Braswell or Bobby Gene Grubbs, were under the influence of any drug whatsoever and the defendant, Bobby Lee Hoffman, was at all times during the trial and for several weeks prior thereto, in the custody of the United States Marshal."

■ While counsel for the defendants did not specifically object to the comments of the court on the trial, we think that they affected substantial rights of the defendants and that it is the responsibility of this court to notice them. Rule 52(b), Federal Rules of Criminal Procedure; United States v. Ward, 3 Cir., 168 F.2d 226, 228; Robertson v. United States, 84 U.S.App.D.C. 185, 171 F.2d 345, 346. We think that none of these appellants have had that fair and impartial trial which is their constitutional right, and the judgment is therefore

Reversed.