[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 23-11695

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

XAVIER DAUGHTRY,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:22-cr-14047-DMM-1

————————————————

Before WILLIAM PRYOR, Chief Judge, and BRASHER and ABUDU, Circuit Judges.

PER CURIAM:

Xavier Daughtry appeals his convictions and sentence for carjacking, 18 U.S.C. § 2119(1), and brandishing a firearm in furtherance of a crime of violence, *id.* § 924(c)(1)(A)(ii). Daughtry challenges the denial of his motions for a mistrial and a new trial and the sufficiency of the evidence. He argues that after *Borden v. United States*, 593 U.S. 420 (2021), and *Counterman v. Colorado*, 600 U.S. 66 (2023), federal carjacking no longer qualifies as a crime of violence, 18 U.S.C. § 924(c)(3)(A). He also argues that his sentence is unreasonable. We affirm.

## I. BACKGROUND

A grand jury indicted Daughtry for carjacking, *id.* § 2119(1), and brandishing a firearm in furtherance of a crime of violence, *id.* § 924(c)(1)(A)(ii). Before trial, the district court ordered a competency evaluation. The competency report stated that Daughtry suffered from no severe mental illness or defect, was competent to stand trial, and was sane at the time of the charged offenses. The report also stated that Daughtry met the criteria for "malingering" by intentionally misrepresenting and exaggerating his symptoms to "avoid entirely or receive diminished repercussions for his criminal behavior." Daughtry and the government stipulated that he was competent to proceed.

At a change of plea hearing, the district court determined that Daughtry did not intend to plead guilty after he repeatedly interrupted the district court with profane language. In response to the courtroom deputy's statement about proceeding to trial, Daughtry said, "I'm gonna kill one of you crackers, man." At the beginning of trial, the district court warned Daughtry that, although he should be present in the courtroom, "if we have any kind of—if what happened last time were to occur again," he "can be removed from the courtroom and watch the trial from the cell block." Daughtry said, "No problem then."

At trial, Officer Catalina Escobar testified for the government that she responded to a 9-1-1 call reporting that a car was stolen from a convenience store. At the convenience store, the victim, V.G., told Escobar that a man approached her car, pointed a gun at her, and told her to "back the f**k up." V.G. said that the man drove northbound in her rental car, a white Nissan Altima. After another officer pulled someone over for driving the car five minutes away from the convenience store, Escobar drove V.G. to her car for a "show-up" identification of the driver. V.G. identified the suspect as the man who stole her car and stated that her identification was in a pink purse on the passenger side. Escobar's body-worn camera footage, capturing her interaction with V.G. and V.G.'s identification of the suspect, was played for the jury. The jury also saw V.G.'s written statement that she exited the convenience store, ran up to her car, told the man that the car belonged to her, and the man "put a gun up to" her and said "back

the f**k up." The written statement described the man as black and wearing no shirt and stated, in parentheses, "(has dreads)."

Deputy John Leckenbusch testified that he received a call to be on the lookout for a stolen white rental car and found one matching that description. Dispatch confirmed that the tag number on that car matched the tag number for the stolen car. He initiated a traffic stop and saw a gun on the driver's seat and a purse. He stated that the dispatch call described the suspect as a shirtless black male with a shirt on his head. He arrested the driver.

V.G. testified that she went to the convenience store for a drink and left her car running but locked because she was alone at night. After she left the store, she saw "someone walking with a purpose up to [her] vehicle." She confronted the man and said that was her car. The man turned around, pointed a gun "to [her] face," and told her to "back the F up." She was afraid that he would shoot her. While he was adjusting the seat, she asked for her cell phone, and he handed her the phone, shut the door, and drove away. Because the man kept his eyes on her when he was speaking, she got a good look at his eyes. The man was shirtless but had something over his head, which she assumed was his shirt. After he left, she returned to the store and called 9-1-1.

While V.G. was testifying about her interaction with the officers, Daughtry interrupted her testimony and said, "F**k your a**. Stop trying playing [sic] with me." V.G. then identified Daughtry as the man who stole her car as well as the man she identified at the show-up identification and described him as wearing a

"blue shirt, black pants, [and] shackles." Daughtry then interrupted the testimony as follows:

> Daughtry:   How the f**k can you said I had dread? [sic]
> V.G.:       Shut up. Sorry.
> Prosecutor: Can you describe—
> Daughtry:   You make no f**king sense, b**ch. You make your f**king mind up.
> V.G.:       Can I say something?
> Daughtry:   F**king thing you said, f**king jigglings (phonetic). Shut the f**k up, man. F**k.

The district court asked Daughtry to control himself, but Daughtry continued:

> Daughtry:   Man, I ain't controlling. F**k them.
> V.G.:       You are lucky. I would have blew [sic] your f**king head off for playing with me.
> Daughtry:   Man, you play games though in your mother f**king head.

V.G. proceeded to testify that she was "very" confident that Daughtry was the man who stole her car at gunpoint and that she wrote that the man "(has dreads)" in parentheses on her written statement because she did not see the dreads, but someone at the convenience store told her that the man had dreads. Daughtry interrupted, "F**k a**." After the government asked V.G. to identify some exhibits, Daughtry interrupted, "Man, bro, what you gonna do, bro? F**k, n****r, what you going to do? N****r will knock

your b**ch a** out, bro, (indecipherable) before I knock you out, man."

While V.G. was identifying photographs of her car, Daughtry interjected, "You tighten up whole a** n****r. Self a** n****r over there smiling at me. What?" Daughtry continued:

| | |
|---|---|
| Daughtry: | B**ch a** n****r, I kill you. |
| District Court: | Mr. Daughtry, you need to— |
| Daughtry: | F**k n****r, I kill you too. |
| District Court: | Mr. Daughtry, I am going to remove you from the courtroom if you don't stop. |
| Daughtry: | F**k n****r, do it. |
| District Court: | All right. Please remove Mr. Daughtry. |
| Daughtry: | F**k a** dump. Fake mother f**ker. |

After Daughtry was removed, V.G. identified a photograph that depicted the firearm that officers found in her car. She testified that she did not place that firearm in the car. The district court paused V.G.'s testimony to tell the jury:

> I have ordered [Daughtry] removed from the court-room based on the outburst that you-all saw. They are placing him in an interview room which has the ability to watch the trial. We won't be able to hear him, but he can see everything that's occurring in the courtroom. I ask you-all to decide the case based on what he's accused of doing as opposed to what you have seen happen in the courtroom.

Defense counsel confirmed that she "believe[d] what [the district court] said was sufficient for now."

After a break, Daughtry moved for a mistrial on the ground that the jury would be unable to reach a verdict without being prejudiced by Daughtry's behavior in the courtroom and interaction with V.G. The district court denied the motion because Daughtry, "despite warnings, has created this circumstance. I think the jury have said they will set aside what happened." The district court asked defense counsel what she would have it tell the jury. Defense counsel asked the district court to explain that trials are stressful, Daughtry was not functioning well, and his behavior should not be used as evidence. When the jury returned, the district court instructed, "Let me again ask you, in deciding the case, let's focus on the crime that he is charged with and disregard what occurred in the courtroom."

Defense counsel requested a sidebar to request that a camera be shut down so that Daughtry could not be seen in court but could see what was happening. After the district court confirmed that Daughtry could see and hear the courtroom, defense counsel renewed the motion for a mistrial on the same ground. The district court stated that it instructed the jury as requested, and defense counsel stated that she would address the matter later.

After V.G. concluded her testimony, Sergeant Kyle MacCarthy testified that he saw a firearm on the driver's seat and a black t-shirt on the front passenger-side seat. He inspected the firearm,

removed the magazine, and ejected a round from the chamber. The hammer of the firearm was cocked, ready to fire.

The government rested, and Daughtry moved for a judgment of acquittal. He argued that the evidence was insufficient to prove that he was the perpetrator or that he intended to cause death or serious bodily injury. He also argued that carjacking was not a crime of violence because it could be committed through intimidation, which did not require use of force. The district court denied the motion. Before closing arguments, the district court asked Daughtry through intra-court video and audio if he wanted to return, but the Marshal responded that Daughtry "made it clear he does not want" to return. Defense counsel confirmed that there was nothing else the district court could do.

The district court again instructed the jury to base its verdict only on the evidence presented and not on any sympathy for or prejudice against Daughtry. The jury convicted him on all counts and found that the firearm was brandished.

Daughtry moved for a new trial on the grounds that he was deprived of his Fifth Amendment right to due process and Sixth Amendment right to an impartial jury. Defense counsel asserted that Daughtry threatened the entire jury and that one juror gasped during Daughtry's exchange with V.G.

The district court denied the motion for a new trial. It explained that Daughtry's competency evaluation revealed evidence of "malingering" to avoid repercussions for his behavior. It stated that Daughtry threatened the Marshals, who recommended that

he be restrained during trial for safety reasons, and recounted his outbursts and verbal exchanges with V.G., the Marshals, and the district court. It ruled that Daughtry was not entitled to a new trial because of the disruption that he caused, particularly where the district court provided several curative instructions, and a new trial would not change the result because the evidence of his guilt was overwhelming. The district court also explained that, in the light of his psychological report, Daughtry's behavior appeared to be an intentional attempt to seek advantage. The district court cited several decisions of this Court and the Supreme Court involving defendants' courtroom outbursts.

Daughtry's presentence investigation report provided a total offense level of 25 and a criminal history score of III, which resulted in an advisory guidelines range of 70 to 87 months of imprisonment for carjacking plus a mandatory consecutive sentence of 84 months for brandishing a firearm during the carjacking. The report described the findings from Daughtry's court-ordered forensic evaluation, which lasted from October to December 2022, that Daughtry was competent and was "malingering" by exhibiting disruptive behaviors to obtain special custody in prison. Daughtry did not object to the report but moved for a downward variance based on his difficult childhood, family circumstances, and mental health conditions, as well as his criminal history category being overinflated because he was on probation during the instant crimes.

At sentencing, Daughtry presented testimony from Dr. Sheila Rapa, a clinical psychologist, who testified that based on

her three-hour evaluation of him, she believed that he had significant mental health issues. But Dr. Rapa testified that she was unaware of his previous competency evaluation or that he was found to be malingering.

The district court sentenced Daughtry to a total sentence of 156 months of imprisonment based on 72 months for the carjacking conviction and a consecutive 84 months for brandishing the firearm. It stated that it considered the statutory sentencing factors, 18 U.S.C. § 3553(a), particularly the nature and circumstances of the crime. It also considered Daughtry's personal characteristics, his personal threats of violence at trial, and his criminal history, which included violence. It explained that it had "no doubt that Mr. Daughtry [had] experienced traumatic experiences, and those, undoubtedly, [] impacted him," but that "above all" there was "a need to protect the public in this case."

## II. STANDARDS OF REVIEW

Five standards govern our review. We review the denial of motions for a mistrial and a new trial for abuse of discretion. *United States v. Reeves*, 742 F.3d 487, 504 (11th Cir. 2014). We review arguments raised for the first time on appeal for plain error, which requires the defendant to establish an error that was plain and that affected his substantial rights. *United States v. Olano*, 507 U.S. 725, 732 (1993). We review the sufficiency of the evidence *de novo* and view "the evidence in the light most favorable to the government, with all inferences and credibility choices drawn in the government's favor." *United States v. Feldman*, 931 F.3d 1245, 1253, 1257

(11th Cir. 2019) (quotation marks omitted). The evidence will be sufficient to sustain a conviction unless "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *United States v. Shabazz*, 887 F.3d 1204, 1221 (11th Cir. 2018). We review whether an offense is a crime of violence, 18 U.S.C. § 924(c), *de novo*. *United States v. Bates*, 960 F.3d 1278, 1285 (11th Cir. 2020). We review the reasonableness of a sentence and weighing of the sentencing factors, 18 U.S.C. § 3553(a), for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007).

### III. DISCUSSION

We divide our discussion in four parts. First, we reject Daughtry's argument that he was entitled to a new trial. Second, we explain that sufficient evidence supports his convictions. Third, we reject his argument that *Borden* and *Counterman* abrogated our precedent holding that carjacking is a crime of violence under the elements clause, 18 U.S.C. § 924(c)(3)(A). Fourth, we explain that his sentence is substantively reasonable.

*A. The District Court Did Not Abuse Its Discretion in Denying Daughtry's Motions for a Mistrial and a New Trial.*

Daughtry argues that the district court should have declared a mistrial because the jury was tainted by prejudice, which violated his rights to a fair trial, an impartial jury, and the presumption of innocence under the Fifth and Sixth Amendments. He argues that the jury was prejudiced by his profane outbursts, argumentative exchanges, and death threats; by V.G. referencing Daughtry's "shackles"; and by the district court referencing his removal to a

remote cell. He also argues that the district court abused its discretion by applying incorrect legal standards. We disagree.

The district court did not abuse its discretion in denying Daughtry's motions. It is well established that a defendant may not benefit from his own misconduct. *See United Stats v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985); *see also United States v. McCormac*, 309 F.3d 623, 626–27 (9th Cir. 2002) (holding that the defendant was not entitled to a mistrial after she argued with the judge and was held in contempt); *United States v. Stewart*, 256 F.3d 231, 242 (4th Cir. 2001) (holding that the defendant was not entitled to a mistrial after he pretended to shoot the jury).

Daughtry argues that he cannot waive his right to a fair trial through misconduct, citing *Braswell v. United States*, 200 F.2d 597 (5th Cir. 1952), and *McKissick v. United States*, 398 F.2d 342 (5th Cir. 1968). In *Braswell*, the former Fifth Circuit held that a violent altercation caused by two of seven defendants at a joint trial and "highly prejudicial" comments by the district judge about the intoxicated state of some of the defendants and possibly a defense witness prejudiced the jury such that none of the defendants received a fair and impartial trial. 200 F.2d at 600–02. In *McKissick*, the former Fifth Circuit held that a mistrial was necessary "to attain substantial justice" after the defendant's counsel reported that the defendant perjured himself at his first trial and asked counsel for help in presenting more perjured testimony. 398 F.2d at 343.

*Braswell* or *McKissick* do not support Daughtry's argument. Unlike the defendants in *Braswell* and *McKissick*, the district court

found that Daughtry's misconduct at trial appeared to be an intentional effort to obtain a benefit and that his outbursts at trial were consistent with his outbursts during his competency evaluation, which resulted in the finding that he was malingering to obtain a benefit. Unlike in *McKissick*, the district court did not abuse its discretion in finding that "substantial justice" would be subverted, instead of attained, by granting Daughtry's motions and allowing him to benefit from his own wrongdoing. *See Rouco*, 765 F.2d at 995; *McKissick*, 398 F.2d at 344. We agree with our sister circuit that, if "such behavior on the part of the defendant were held to require a mistrial, it would provide an easy device for defendants to provoke mistrials whenever they might choose to do so." *Stewart*, 256 F.3d at 242 (internal quotation marks omitted).

The district court minimized the risk of prejudice to Daughtry with several curative instructions. It instructed the jury to "focus on the crime" and to "disregard what occurred in the courtroom." It told defense counsel that it believed that the jury expressed that it would "set aside what happened." After it asked defense counsel if there was anything else that it should do, defense counsel conceded that the curative instruction was "sufficient for right now." And it found that a second trial would not produce a different outcome because the evidence of Daughtry's guilt was overwhelming, and it had no reason to believe that Daughtry, who assured the district court after his outbursts at the change-of-plea hearing that there would be "no problem" during trial, would not continue his disruptive behavior at a second trial.

The district court did not plainly err by not *sua sponte* declaring a mistrial after V.G. identified Daughtry as wearing "shackles." Although "restraints, if visible, may prejudice the jury," Daughtry identifies no precedent holding that a witness's passing reference to a defendant's restraints, without anything in the record suggesting that the restraints were visible to the jury, warrants a mistrial. *United States v. Ahmed*, 73 F.4th 1363, 1377 (11th Cir. 2023); *see United Stats v. Moore*, 954 F.3d 1322, 1330 (11th Cir. 2020); *United States v. Ramirez-Flores*, 743 F.3d 816, 822 (11th Cir. 2014). Even if Daughtry could establish plain error, he fails to establish a reasonable probability that, but for the alleged error, the outcome of his trial would have been different in the light of the strong evidence of his guilt. *See United States v. McLellan*, 958 F.3d 1110, 1119 (11th Cir. 2020). Insofar as he challenges his removal to a remote cell and the district court referencing his absence, the record reveals that after he was warned that he would be removed *if* he did not stop interrupting, he replied, "Do it." And after he was removed, defense counsel asked for a sidebar and a curative instruction, which the district court provided. Daughtry cannot challenge receiving what he asked the district court to do. *See United States v. Brannan*, 562 F.3d 1300, 1306 (11th Cir. 2009).

Daughtry also argues that the district court applied the incorrect legal standards when it denied his motions while emphasizing his waiver of the right to be present, Fed. R. Crim. P. 43(c). But in considering whether to grant a mistrial, the district court did not rule that Daughtry waived his right to be present. Instead, the district court considered whether Daughtry was entitled to the benefit

of a new trial based on his own misconduct. Although the district court stated that Daughtry must prove that the alleged error justifying a mistrial likely had a "substantial influence" on the jury's verdict, the district court cited the correct harmless-error standard, Fed. R. Crim. P. 52, which provides that any error that does not affect "substantial rights" must be disregarded.

### B. Sufficient Evidence Supports Daughtry's Convictions.

Daughtry argues that the government failed to present sufficient evidence that he committed the carjacking offense due to evidentiary discrepancies about the perpetrator's description. He also argues that the evidence was insufficient to establish that he acted with the specific intent "to cause death or serious bodily harm" because he lowered his weapon before taking control of the car, and V.G. remained by the car until he handed her cell phone to her and drove away. He contends that without sufficient evidence to support the carjacking offense, insufficient evidence supports his section 924(c) conviction. We disagree.

Sufficient evidence supports Daughtry's convictions. V.G. identified Daughtry as the man who pointed a firearm at her and drove away in her car. She reported the crime and described the perpetrator to Escobar. The description of the perpetrator and the crime were recorded on Escobar's body-worn camera and played for the jury. Within five minutes of the 9-1-1 dispatch call, Leckenbusch stopped a car matching the description and tag number of V.G.'s car. Daughtry was driving the car. Escobar drove V.G. to her car for a "show-up" identification, and V.G. identified

Daughtry as the man who pointed a firearm at her and stole her car. Daughtry highlights the discrepancy on V.G.'s written statement that the perpetrator "(has dreads)," but V.G. explained that she added that information in parentheses specifically because it came from another person at the convenience store. She also testified that because the perpetrator looked at her when he was speaking, she was able to get a good look at his eyes.

Sufficient evidence also supports the finding that Daughtry intended to cause death or serious bodily harm if necessary to steal the car. V.G. testified that Daughtry pointed a firearm at her and told her to "back the f**k up" when she approached her car, and MacCarthy testified that the firearm was ready to fire because a bullet was in the chamber and the hammer was cocked back. The jury was entitled to find from this evidence that Daughtry intended to harm V.G. if she did not comply with his orders. *See Holloway v. United States*, 526 U.S. 1, 8–12 (1999); *United States v. Caldwell*, 81 F.4th 1160, 1186 (11th Cir. 2023). And he offers no other reason why the evidence fails to support his section 924(c) conviction.

*C. Carjacking Qualifies as a Crime of Violence, 18 U.S.C. § 924(c).*

Daughtry argues that after *Borden* and *Counterman*, carjacking does not qualify as a crime of violence under the elements clause, 18 U.S.C. § 924(c)(1)(A), because carjacking can be committed through intimidation with a *mens rea* of recklessness. Daughtry acknowledges that we held in *Smith* that carjacking is a crime of violence under the elements clause, *id.*, but he contends that *Smith* no longer controls. *See In re Smith*, 829 F.3d 1276 (11th Cir. 2016).

A prior panel's holding is binding on all later panels unless it is overruled or undermined to the point of abrogation by a decision of the Supreme Court or of this Court sitting en banc. *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008). The decision must be "clearly on point" and "actually abrogate or directly conflict with, as opposed to merely weaken, the holding of the prior panel." *United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009).

*Smith* controls. In *Smith*, we reaffirmed that federal carjacking is a crime of violence—and a section 924(c) predicate—under the elements clause. 829 F.3d at 1280. We explained that a section 924(c) conviction with carjacking as the predicate is valid regardless of the residual clause because the conviction "meets the requirements of that statute's [elements] clause." *Id.* at 1281. And we rejected the same intimidation argument Daughtry makes now. *See id.* at 1281 n.5.

*Borden* and *Counterman* did not overrule *Smith*. *Borden* held that a criminal offense that requires only a *mens rea* of recklessness cannot qualify as a "violent felony" under the Armed Career Criminal Act, 18 U.S.C. § 924(e), when it does not require the employment of force against another person. 593 U.S. at 423, 437–42, 445. And *Counterman* held that for criminal offenses involving true threats of violence, the government must prove that the defendant possessed a *mens rea* of at least recklessness as to the threatening statements. 600 U.S. at 69, 73. Because neither *Borden* nor *Counterman* abrogated our holding in *Smith* that carjacking qualifies as a crime of violence under the elements clause, 18 U.S.C.

§ 924(c)(3)(A), we remain bound by *Smith*. *See Archer*, 531 F.3d at 1352; *Kaley*, 579 F.3d at 1255.

### *D. Daughtry's Sentence is Substantively Reasonable.*

The district court did not abuse its discretion by imposing a guidelines-range sentence of 72 months of imprisonment followed by a consecutive 84 months of imprisonment. Daughtry challenges the decision not to vary downward to account for his mental health issues, difficult childhood, and overinflated criminal history. But the district court considered Daughtry's personal history and his mental health evaluations and testimony. It acknowledged his traumatic experiences and stated that it reviewed the details of his criminal history, which involved more violence. The district court was entitled to find that, despite Daughtry's mitigating circumstances, the "need to protect the public" deserved more weight. *See United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015). Daughtry's sentence is substantively reasonable. *See United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc).

## IV. CONCLUSION

We **AFFIRM** Daughtry's convictions and sentences.