[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-13289
_____

D.C. Docket No. 1:17-cr-00093-KD-B-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

DUSTIN LEE MCLELLAN,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(May 6, 2020)

Before ED CARNES, Chief Judge, ROSENBAUM, and BOGGS,* Circuit Judges.

BOGGS, Circuit Judge:

_____

* Honorable Danny J. Boggs, United States Circuit Judge for the Sixth Circuit, sitting by
designation.

Dustin McLellan was charged with three counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). He was convicted of the first count after a jury trial, and later pleaded guilty to the second count in exchange for the government's agreement to drop the third count. Based on three prior state felony convictions, he was sentenced under the Armed Career Criminal Act (ACCA) to 180 months of imprisonment. McLellan now appeals, offering three lines of argument. First, he contends that the district court abused its discretion when it permitted one of his arresting officers to offer improper "expert" testimony at trial on the correlation between guns and drug activity and to suggest that McLellan was selling drugs. Second, he contends that his sentence under the ACCA was improper because Alabama's first-degree burglary statute—the statute for two of his prior felonies—criminalizes more conduct than the ACCA's "generic" definition of burglary, in contravention of Supreme Court precedent. *See, e.g., Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016). Third, after McLellan filed his appeal, the Supreme Court decided *Rehaif v. United States*, 139 S. Ct. 2191 (2019), which held that in a felon-in-possession prosecution, the government must prove that the defendant "knew he belonged to the relevant category of persons barred from possessing a firearm." *Id.* at 2200. McLellan argues that, based on *Rehaif*, his convictions must be vacated because his indictment did not allege, the jury was not instructed to find, and his plea colloquy did not address, whether he knew he was a

2

felon when he possessed the firearm.  We affirm, but remand for clarification of the judgment to reflect the sentence the district court said it would have imposed if the Armed Career Criminal Act did not apply.

## I.    FACTS AND PROCEDURAL HISTORY

McLellan's first felon-in-possession count stems from his arrest on March 22, 2017.  At around 12:30 p.m. that day, two officers from the Brewton, Alabama, police department found McLellan asleep in his car, which was parked in a secluded area known to the officers as a place that was frequently used for illegal narcotics transactions and dumping.  As the officers approached McLellan's car, one officer saw drug paraphernalia in plain view inside the car, as well as a "crystalline-type substance" on McLellan's lap, which was later found to be methamphetamine.  The other officer saw a firearm located on the center console area of the car, within McLellan's reach.  McLellan was arrested following a pat-down and search in and around the car, which revealed a digital scale with white residue on it, a glass pipe also with white residue, several empty plastic bags, a syringe, and four different types of tablets in different bags.

On May 24, 2017, a grand jury indicted McLellan on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  A superseding indictment later added two more § 922(g)(1) counts against McLellan, stemming

3

from incidents that had occurred before his March 2017 arrest. McLellan went to trial on the first count, where he was convicted.

Following his conviction at trial, McLellan agreed to plead guilty to the second count in exchange for the government's dismissal of the third count. On October 23, 2017, McLellan admitted to the following facts in support of his guilty plea on the second count:

> [O]n or about August 19th, 2016 in the Southern District of Alabama, the defendant was driving a car in Atmore when he was pulled over for a traffic stop. In the search of that car, the police officers recovered a Highpoint nine millimeter handgun from the glove compartment, Serial Number P1562393. The Government would prove that the handgun was manufactured in Ohio; therefore, outside of the State of Alabama and was in and affecting interstate commerce. The Government would prove that the defendant willfully and knowingly possessed that firearm and that prior to the date that the defendant possessed that firearm, he had been convicted of a felony, a crime punishable by imprisonment for a term exceeding one year; namely, burglary in the first degree on September 23rd of 1999 in the Circuit Court of Baldwin County Alabama, Case Number CC1999-000260.

McLellan's Presentence Investigation Report noted that he qualified as an armed career criminal under the ACCA because he had three or more prior convictions for "violent felonies" or "serious drug offenses." *See* 18 U.S.C. § 924(e)(1). McLellan has two Alabama first-degree burglary convictions and a conviction for Attempted Unlawful Manufacture of a Controlled Substance (which McLellan does not dispute is a "serious drug offense"). The district court sentenced

4

McLellan to 180 months each on the two convictions, with the terms to run concurrently.  He now appeals.

## II.    DISCUSSION

### A. Testimony at Trial

McLellan argues that the district court erred when it permitted one of his arresting officers, Matthew Jordan, to testify about certain matters at trial.  We address these evidentiary arguments first, because their disposition determines whether there can be a retrial.  Because McLellan preserved these arguments by objecting at trial, we review the district court's evidentiary rulings for abuse of discretion. *United States v. Jiminez*, 224 F.3d 1243, 1249 (11th Cir. 2000).

### 1.  Rule 701

First, McLellan argues that the district court improperly permitted Officer Jordan, "to testify as an expert" on the relationship between guns and drug activity. At trial, Officer Jordan was asked: "Now, based on your training and experience, is there a correlation between weapons and drugs?" to which he responded, "[y]es, there is."  Officer Jordan then explained that it was "very common" for individuals involved in narcotic activity "to possess handguns, a lot of times for protection" because of the threat of "robbery of their narcotics" and the "sometimes large amounts of money they possess as well."

5

Under the Federal Rules of Evidence, a witness's opinion testimony—opinions of matters over which they do not have direct knowledge—is classified as either lay testimony or expert testimony.  "At the defendant's request," the government must disclose before trial any witness it wishes to present as an expert and must also provide the defendant with a summary of the expected testimony.  *See* Fed. R. Crim. P. 16(a)(1)(G); *United States v. Stahlman*, 934 F.3d 1199, 1219 (11th Cir. 2019).  A witness that is not classified as an expert can offer an opinion only if it is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.

Contrary to McLellan's insistence, Officer Jordan did not provide an improper expert opinion.  His testimony did not require any scientific, technical, or specialized knowledge, but was rationally based on his perception of the relationship between guns and drug activity that he acquired during his time as a police officer in the narcotics division.[1]  We have held that "[a] witness is permitted to deliver a lay opinion testimony based on his professional experiences," and Officer Jordan's testimony involved precisely the type of knowledge that is acquired from the

---

[1] Earlier in his testimony, Officer Jordan testified that he had been a police officer in the Brewton Police Department for approximately three years, was assigned to the narcotics division at the time of McLellan's arrest, and had made approximately 150 arrests over the course of his career.

professional experiences of a police officer.  *United States v. Williams*, 865 F.3d 1328, 1341, 1342 (11th Cir. 2017).

Indeed, Officer Jordan's testimony was no different from the testimony at issue in *Williams*, in which several Coast Guard officers were asked for their opinions on the contents of certain packages that were thrown off the side of a boat during an arrest at sea.  The officers testified that, based on the size and appearance of the packages, they believed that the packages contained cocaine.  *Id.* at 1341–42.  We held that the district court did not abuse its discretion in admitting the testimony because the lay opinion of a law-enforcement officer does not "automatically become[] an expert opinion simply because it involves knowledge that preexisted the investigation in the present case."  *Id.* at 1342.  This conclusion is in line with several of our earlier precedents, in which we have permitted law-enforcement witnesses to offer lay testimony "based upon their particularized knowledge garnered from years of experience within the field."  *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., Ltd.*, 320 F.3d 1213, 1223 (11th Cir. 2003); *see also Stahlman*, 934 F.3d at 1223 (permitting an FBI agent to offer lay testimony about the nature of an online classified ad in a sex-crimes case); *United States v. Tinoco*, 304 F.3d 1088, 1119 (11th Cir. 2002) (permitting an officer to offer his characterization of a vessel as a "go-fast" boat); *United States v. Novaton*, 271 F.3d

968, 1008–09 (11th Cir. 2001) (permitting officers to offer lay testimony about the meaning of coded terms in a drug-trafficking case).

This was not a situation in which Officer Jordan's testimony would have improperly prejudiced the jury towards a certain view of evidence that was otherwise unambiguous. *See United States v. Hawkins*, 934 F.3d 1251, 1265 (11th Cir. 2019) (holding that the district court committed plain error when it permitted a narcotics agent to repeatedly summarize his interpretation of unambiguous phone calls, which "effectively spoon-fed his interpretations" to the jury (citation omitted)).  Instead, Officer Jordan merely offered his view of the relationship between guns and drug activity; a view he acquired from observations he made as a police officer, and one that did not require any additional specialized skills or training to obtain.  The jury was free to reject that interpretation, and there is no evidence from the trial record to suggest that it was improperly prejudiced by the testimony.  The district court thus did not abuse its discretion in permitting Officer Jordan's testimony on this relationship.

## 2.  Rule 403

Second, McLellan argues that the district court abused its discretion under Federal Rule of Evidence 403 when it permitted Officer Jordan to testify that he believed McLellan possessed a "sellable" amount of meth when he was arrested. Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is

8

substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

McLellan argues that Officer Jordan's testimony was unfairly prejudicial because it suggested that McLellan was a drug dealer. But we have held that in a situation such as this, in which the defendant contests at trial that he knowingly possessed the gun, "evidence of possession of illegal drugs is relevant to determining whether a defendant knowingly possessed a weapon found in close proximity to drugs." *United States v. Thomas*, 242 F.3d 1028, 1031 (11th Cir. 2001). Put simply, the connection between drug-dealing and firearm possession is an appropriate one to be drawn during a felon-in-possession case.

Furthermore, McLellan contested the issue of whether the amount of meth he possessed was sellable or was solely for personal use, and thus the government was entitled to rebut his characterization. During cross examination, McLellan's counsel asked Officer Jordan whether he believed the amount of meth that McLellan possessed was "a personal-use quantity." Officer Jordan responded that he could not say for sure. McLellan thus encouraged the jury to consider the relevance of this issue and therefore on re-direct, the government was entitled to ask Officer Jordan whether he believed the amount was "sellable."

9

Finally, although the amount of meth recovered from McLellan was less than one gram, there was additional evidence to support the inference that that amount was indeed "sellable," and was thus not unfairly prejudicial. McLellan was found with several items associated with drug selling, including a digital scale with white residue on it, several smaller plastic bags inside a larger one, a glass pipe, a syringe, and four different types of tablets in different bags. These items are associated with drug activity and were introduced at trial. The jury therefore did not even need Officer Jordan's testimony to draw the potential connection between McLellan's activities and drug dealing. The circumstances do not suggest that there was any undue prejudice from Officer Jordan's testimony that would have "substantially outweighed" the relevance of it. Fed. R. Evid. 403. Given the "extraordinary remedy" of excluding evidence under Rule 403, the district court did not abuse its discretion in permitting Officer Jordan's testimony. *United States v. Troya*, 733 F.3d 1125, 1132 (11th Cir. 2013) (citation omitted).

## B. Sentencing

McLellan also argues that his 180-month sentence should be vacated because two of his predicate felonies were wrongly classified as "violent" felonies under the ACCA. The ACCA requires a 15-year mandatory minimum sentence for a defendant convicted of being a felon in possession if the defendant has three or more prior convictions for a "serious drug offense" or a "violent felony," which includes

10

"burglary, arson, or extortion."  18 U. S. C. §§ 924(e)(1), (e)(2)(B)(ii).  McLellan argues that two of his predicate felonies—Alabama convictions for first-degree burglary[2]—cannot serve as predicate offenses because the statute under which he was convicted criminalized more conduct than "generic" burglary.[3]

We decline McLellan's invitation to wade into the depths of evaluating the applicability of the ACCA, because the record is clear that the district court would have imposed the same 180-month sentence regardless of whether the mandatory minimum applied.  At McLellan's sentencing, the district court noted that even if the ACCA were inapplicable, it still would have sentenced McLellan "to 10 years and 5 years to run consecutive" on his two convictions, because "the 180 months is sufficient, no more greater than necessary, to fulfill the sentencing factors under [28 U.S.C. §] 3553."[4]  When "a decision either way will not affect the outcome of" a sentencing, it is unnecessary for us to decide it.  *United States v. Keene*, 470 F.3d 1347, 1348 (11th Cir. 2006).  Under *Keene*, "we need not review an issue when (1) the district court states it would have imposed the same sentence, even absent an

---

[2] McLellan's third predicate felony was a conviction for Attempted Unlawful Manufacture of a Controlled Substance, which McLellan does not dispute qualifies as a "serious drug offense."

[3] This argument depends on the Supreme Court's holdings in cases such as *Mathis v. United States*, which held that a prior felony "qualifies as an ACCA predicate if, but only if, its elements are the same as, or narrower than, those of the generic offense." 136 S. Ct. at 2247.

[4] During another part of the hearing, the sentencing judge stated that "if I have determined that he is a career offender incorrectly, I would still sentence him to 15 years."  At the end of the hearing, the district court explained that it had meant to say "armed career criminal" instead of "career offender."

11

alleged error, and (2) the sentence is substantively reasonable." *United States v. Goldman*, ____F.3d____, 2020 WL 1444961 at *6 (11th Cir. Mar. 25, 2020). Our rationale for this policy is to avoid "pointless reversals and unnecessary do-overs of sentence proceedings." *Keene*, 470 F.3d. at 1349 (citation omitted). Since the district court clearly stated that it would have imposed the same sentence, we will review McLellan's sentence to ensure only that it was substantively reasonable.

McLellan's 180-month sentence was not substantively unreasonable. McLellan's Presentence Investigation Report showed that, by the time of his convictions in the current case at age thirty-five, McLellan had at least fourteen prior convictions. For example, in 1999, McLellan was convicted of one of his first-degree burglaries for breaking into a dwelling and stealing two shotguns, a rifle, and a hunting bow. In a different burglary, he was armed with a gun and stole two shotguns and three pistols. In 2003, McLellan was convicted of third-degree domestic violence after punching a victim twice in the face. Additionally, by the time he reached his thirties, McLellan had become heavily involved with the possession, manufacture, and sale of drugs. In 2012, McLellan was convicted of two counts related to the unlawful manufacture of controlled substances. By the time of his sentencing in this case, he had additional charges pending on five counts of possessing a controlled substance, two counts relating to the possession and sale of drug paraphernalia, one count of attempting to elude, and two counts of

12

unlawfully possessing a pistol. The probation office also notified the district court that while McLellan was awaiting sentencing in this case, he had made a knife while in prison and had stabbed three inmates with it. In short, McLellan's criminal history demonstrates a strong disrespect for the law as well as a consistent pattern of violence.

The district court, in sentencing McLellan, properly considered his prior convictions, as well as multiple other factors relevant to § 3553(a). The court expressly noted that McLellan, in addition to the illegal-firearm-possession convictions from this case and the first-degree burglaries that were at issue at the hearing, had "participated in several violent acts," including his domestic-violence conviction and his stabbing of a fellow inmate while he was incarcerated. The court further determined that McLellan's criminal history suggested "not only just drug use but being involved in the drug sales also." It also considered that although McLellan has a GED, he has no extensive work history.

Thus, given the "great discretion" that the district court enjoys in sentencing, we cannot say that "we are left with the 'definite and firm' conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors." *Goldman*, 2020 WL 1444961 at *6 (quoting *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc)). We thus decline to "send the case back to the

13

district court since it has already told us that it would impose exactly the same sentence, a sentence we would be compelled to affirm." *Keene*, 470 F.3d at 1350.

## C. Impact of *Rehaif v. United States*

During the pendency of this appeal, the Supreme Court decided *Rehaif v. United States*, 139 S. Ct. 2191 (2019), which held that in a felon-in-possession prosecution, "the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Id.* at 2200. Supplemental briefing was submitted, and McLellan now makes two additional arguments based on *Rehaif*. First, he contends that his superseding indictment failed to charge an offense because it did not include a knowledge-of-status element, thus depriving the district court of jurisdiction over his case. Second, he contends that both of his convictions must be overturned because his jury instructions at trial on count one, and his plea colloquy on count two, failed to include the knowledge-of-status element.

### 1. Jurisdiction

For each count against McLellan, his superseding indictment stated, in relevant part, that "having been convicted of a crime punishable by imprisonment for a term exceeding one (1) year, to-wit: Burglary, First Degree, on September 23, 1999, in the Circuit Court of Baldwin County, Alabama . . . [McLellan] did knowingly possess, in and affecting commerce, a firearm . . . [i]n violation of Title

14

18, United States Code, Section 922(g)(1)." McLellan argues that, because the indictment failed to include the knowledge-of-status element, as discussed in *Rehaif*, it failed to charge a crime and thus deprived the district court of jurisdiction over his case.

However, this argument is squarely precluded by our recent holding in *United States v. Moore*, ___F.3d___, 2020 WL 1527975 at *9 (11th Cir. Mar. 31, 2020), which held that a district court has jurisdiction over a felon-in-possession indictment that was filed before *Rehaif* even if it did not charge the knowledge-of-status element. This holding squarely follows the Supreme Court's holding in *United States v. Cotton*, 535 U.S. 625, 630 (2002), as well as our earlier holding in *United States v. Brown*, 752 F.3d 1344, 1354 (11th Cir. 2014), both of which held that an indictment's failure to charge an element of the offense was a non-jurisdictional defect that did not affect the rights of the accused.

The defendants in *Cotton* had argued that because their indictment failed to charge the quantity of drugs they were accused of trafficking—a sentence-enhancing element under *Apprendi v. New Jersey*, 530 U.S. 466 (2000)—then the district court did not have jurisdiction over their case. But the Supreme Court rejected that argument, holding that "defects in an indictment do not deprive a court of its power to adjudicate a case." *Cotton*, 535 U.S. at 630. We built upon that foundation in *Brown*, which involved a defendant who had pleaded guilty to receiving counterfeit

15

money, but whose indictment failed to expressly allege that she had *knowingly* violated the statute. On appeal, the defendant argued that her conviction should be overturned because the omission of the mens rea element deprived the district court of jurisdiction. We rejected the argument, noting that the omission of a mens rea element does not render the indictment incapable of charging a crime, which is all that is necessary to vest the district court with jurisdiction. *See Brown*, 752 F.3d at 1353–54. We noted that the proper question to ask in determining whether an indictment is jurisdictionally defective is "whether the indictment charged the defendant with a criminal 'offense[] against the laws of the United States.'" *Id.* at 1353 (quoting 18 U.S.C. § 3231). For example, if an indictment charges that the defendant violated a regulation that carried only civil penalties, but does not allege any corresponding criminal violation, that indictment would fail to charge a *crime* against the United States and would thus be jurisdictionally defective. *See United States v. Izurieta*, 710 F.3d 1176, 1184 (11th Cir. 2013). But there is no jurisdictional defect if an indictment merely fails to include that the defendant *knowingly* committed the crime but otherwise clearly alleges the unlawful conduct that the defendant is accused of committing.

Here, the indictment unquestionably charged McLellan with violating the felon-in-possession statute, and even included one of the predicate felonies that formed the basis of the accusation. The specific prohibited conduct—the possession

16

of the firearm as a felon—was clearly described in the indictment, and thus the indictment did not deprive the district court of jurisdiction.

2. Challenges to Jury Instructions and Plea Colloquy

Having concluded that the district court had jurisdiction over McLellan's case, we next review McLellan's substantive challenges to his jury instructions and plea colloquy. McLellan failed to raise either challenge before the district court, and thus we review for plain error. *See United States v. Reed*, 941 F.3d 1018, 1020 (11th Cir. 2019); *Moore*, 2020 WL 1527975 at *12.

To overturn a conviction on plain-error review, the defendant "must show that: (1) an error occurred; (2) the error was plain; (3) it affected his substantial rights; and (4) it seriously affected the fairness of the judicial proceedings." *United States v. Gresham*, 325 F.3d 1262, 1265 (11th Cir. 2003). The Supreme Court has since clarified that for an error to have affected a defendant's substantial rights, there must be "'a reasonable probability that, but for the error,' the outcome of the proceeding would have been different[.]" *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 76, 82 (2004)).

McLellan contends that his conviction at trial on his first felon-in-possession count should be overturned because the jury instructions failed to include the knowledge-of-status element. However, this error, although now plain—thus

17

meeting the first two parts of the plain-error analysis—did not affect McLellan's substantial rights or the fairness of the judicial proceedings.

It is undisputed that McLellan *is* a felon, and he stipulated to that fact at trial. Because of this stipulation, made pursuant to *Old Chief v. United States*, 519 U.S. 172, 191–92 (1997), the government was prohibited from introducing any evidence of McLellan's prior felonies. But that does not mean that the government would have been similarly prohibited had McLellan actually contested the knowledge-of-status element at trial. McLellan has multiple prior felonies, for which he served approximately ten years in prison. If McLellan is retried, he would not be entitled to have simply a different jury instruction but with the same evidence that was presented at trial. He would instead be confronted with the evidence of his knowledge of his felonies.

Indeed, it is inconceivable that McLellan did not know that he was a felon when he possessed the gun. The record shows that McLellan has served approximately ten years in prison, on and off, including an almost eight-year long sentence between 2003 and 2011 for a probation violation on a first-degree burglary conviction.[5] At his sentencing, McLellan acknowledged that he "was sent to prison for 10 years" for prior burglaries. McLellan also made a statement to the judge

---

[5] We are permitted to "consult the whole record when considering the effect of any error on [McLellan's] substantial rights." *Reed*, 941 F.3d at 1021 (quoting *United States v. Vonn*, 535 U.S. 55, 59 (2002)).

indicating that, before the time of these offenses, he knew that he was not permitted to possess a firearm due to his prior convictions. Referring to an earlier occasion, he recounted that: "Me and my mother got in an argument because she had my uncle come in there with the shotgun. . . . And I remember saying if I get caught with one of these—and I made a comment about going to prison because I just wanted the shotgun put back in place to have something to protect us with." In short, this is not a situation in which McLellan's felony status was "hotly contested." *See United States v. Balde*, 943 F.3d 73, 97 (2d Cir. 2019). We have held that, where the record clearly demonstrates that it would be implausible for the defendant to not have been aware of his felony status, a *Rehaif* error does not affect his substantial rights. *Reed*, 941 F.3d at 1022. The fairness of the proceedings takes on additional importance here as well, as "[w]e will not penalize the government for its failure to introduce evidence that it had but that, prior to *Rehaif*, it would have been precluded from introducing." *United States v. Miller*, ___F.3d____, 2020 WL 1592254 at *4, (2d Cir. Apr. 2, 2020). Indeed, it would negatively affect the fairness and reputation of the judicial proceedings to remand this case for retrial when there is clear evidence that McLellan was aware of his felony status. There was thus no plain error in the district court's failure to instruct the jury of the knowledge-of-status element.

Finally, McLellan argues that even if his conviction at trial on count one is upheld, that his guilty plea on count two should still be overturned because his plea

19

colloquy omitted the knowledge-of-status element.  In effect, McLellan is arguing that he never pleaded guilty to a crime, because the government did not proffer, and he did not admit, that he knew he was a felon when he possessed the gun in the circumstances described by his plea colloquy.  However, this argument is unavailing because McLellan cannot demonstrate "a reasonable probability that, but for the error, he would not have entered the plea." *Dominguez Benitez*, 542 U.S. at 76. There was no contemporaneous evidence to suggest that, had the indictment included the knowledge-of-status element, McLellan would have changed his plea and proceeded to trial on the second count.  Proceeding to trial would have deprived McLellan of any benefit of his guilty plea, and he would have risked an additional conviction on his third felon-in-possession count, which had been dismissed pursuant to the plea.  And as discussed above, if McLellan had proceeded to trial, the record reveals no basis for concluding that the government would have been unable to able to prove that McLellan knew he was a felon when he possessed the gun.  We thus hold that any error from the lack of a knowledge-of-status element in McLellan's plea colloquy did not affect his substantial rights.

***

For the foregoing reasons, we AFFIRM the district court but REMAND for clarification of the judgment to reflect the sentence the district court said it would have imposed if the Armed Career Criminal Act did not apply.

20