[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-12734

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

GERALD LITTLE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:21-cr-00348-ECM-JTA-1

_____

Before ROSENBAUM, BRASHER, and ABUDU, Circuit Judges.

PER CURIAM:

Gerald Little appeals his conviction for possession of ammunition as a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and his sentence of 120 months' imprisonment. He contends that the district court erred by refusing to instruct the jury on a justification defense, and by applying a guideline "cross reference," U.S.S.G. § 2K2.1(c)(1)(B), that substantially increased his offense level and guideline sentencing range. We conclude that the court properly declined to give a justification instruction, and that any error in applying the cross reference was harmless, so we affirm.

## I.

A grand jury returned an indictment alleging that Little "knowingly possessed live ammunition" on June 26, 2021, in violation of 18 U.S.C. § 922(g)(1). Little pled not guilty and went to trial.

The charge arose out of a shooting at the funeral of James Gipson. On June 26, according to the government's trial evidence, Little arrived for the memorial service at the town's municipal complex and caused a disturbance. He appeared to be upset about the treatment of his aunt, the long-term partner of the deceased, and he made threats about killing the attendees before being escorted out. An attendee notified Lieutenant Randall Johnson, who arrived soon after to investigate, but Little had left the complex. After the memorial service, attendees gathered in a nearby

cemetery for a graveside service, while Johnson remained in the parking lot.

A short while later, Lieutenant Johnson heard gunfire—three or four rounds, a pause of five to ten seconds, and then three or four more rounds. When he rushed over to the cemetery, he learned that several funeral attendees had been shot, and that a white SUV involved in the shooting had fled. Police recovered four shell casings from the ground at the scene, all from the same firearm, but they did not recover a firearm or locate the vehicle.

Funeral attendees who testified for the government stated that, after the memorial service, they saw Little at the cemetery sitting in the front passenger seat of a white SUV with the windows down. The SUV was playing loud music and disrupting the graveside service. A confrontation ensued between Little and several attendees—including the deceased's brothers, Jerry Gipson and Otis Gipson, and Jerry's fiancé, Courtney Molder—who asked Little to leave. Little refused to leave and threatened to "kill everybody out here." He then pulled out a gun—handed to him by the driver of the SUV, Little's girlfriend—and began shooting out of the passenger window. He struck Jerry three times in the chest, killing him, and wounded Otis and two other attendees. The SUV then sped off out of the cemetery. No government witness reported seeing a weapon other than Little's gun or a shooter other than Little.

Defense witnesses disputed some of the circumstances at the cemetery. Little's niece testified that, before gunfire erupted, she

saw "30 or more people" at the white SUV, hitting Little and trying to pull him from the vehicle.  She also saw a "guy coming from a Crown Vic . . . with a pistol" who shot at the SUV as it was leaving the cemetery, and she later observed a bullet hole in the white SUV.  Similarly, Little's sister testified that, after the initial gunshots, she heard someone yell to "kill that m—f—," and she saw a man fire back at the SUV as it fled, hitting the passenger side near the gas tank.

Citing the testimony of the defense witnesses, Little asked the district court to instruct the jury on a "justification defense" to the § 922(g)(1) unlawful possession charge.  He maintained that a reasonable jury could conclude that he was under attack from attendees surrounding the SUV.  The government responded that the evidence was insufficient to sustain a jury charge on the justification defense.

The district court denied the requested defense instruction. Stating that the justification defense was "only available in extraordinary circumstances," the court reasoned that no reasonable jury could find that Little "did not negligently, if not recklessly, place himself in a situation where the need for him to possess ammunition was present."  The court cited evidence that, after disrupting and making threats of physical violence inside the complex, Little went to the cemetery and disrupted proceedings by playing loud music.  In the court's view, permitting a justification defense in these circumstances would "frustrate, not further, the purpose" of § 922(g).  The jury returned a guilty verdict.

Then, at sentencing, the district court calculated Little's guideline range under the guideline for second-degree murder, § 2A1.2, rather than the guideline for unlawful gun possession, § 2K2.1. The court took that action under § 2K2.1's "cross reference," § 2K2.1(c)(1)(B), because it found that Little used the ammunition he unlawfully possessed to kill another person. As a result, Little's guideline range became 360 months to life, rather than 51 to 63 months.

The district court sentenced Little to the statutory maximum of ten years in prison, concurrent with any sentence imposed in the related state cases arising from the shooting. The court explained that the maximum sentence was warranted given Little's "extensive" and "escalat[ing]" criminal history and the severity of the conduct in this case, which showed he was a danger to the community and had been "undeterred by previous periods of incarceration." Finally, the court made clear that, even if the cross reference did not apply, it would have varied upward to 120 months, given the facts of the case and the 18 U.S.C. § 3553(a) sentencing factors. Little appeals.

## II.

Little first argues that the district court erred in failing to instruct the jury on the defense of justification. We review the refusal to give a requested jury instruction for an abuse of discretion. *United States v. Martinelli*, 454 F.3d 1300, 1309 (11th Cir. 2006). We review *de novo* a district court's determination whether a defendant has set forth a sufficient proffer to permit a justification defense.

*United States v. Dicks*, 338 F.3d 1256, 1257 (11th Cir. 2003).  In general, "a defendant is entitled to have presented instructions relating to a theory of defense for which there is any foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility."  *United States v. Palma*, 511 F.3d 1311, 1315 (11th Cir. 2008).

Section 922(g)(1) prohibits the knowing possession of a firearm or ammunition after a felony conviction.  18 U.S.C. § 922(g)(1).  In "extraordinary circumstances," a defendant facing prosecution under § 922(g)(1) may invoke the defense of justification to legally excuse his criminal act.  *United States v. Deleveaux*, 205 F.3d 1292, 1297–98 (11th Cir. 2000).  The "justification defense does not negate any element of § 922(g)(1), but is an affirmative defense" that must be proved by the defendant.  *Id.*; *see Dicks*, 338 F.3d at 1257.

To establish a justification defense to a § 922(g)(1) charge, a defendant must show that (1) he was under unlawful and imminent threat of death or serious bodily injury; (2) he did not negligently or recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) he had no reasonable legal alternative to violating the law; and (4) there was a direct causal relationship between the criminal action and the avoidance of the threatened harm.  *Deleveaux*, 205 F.3d at 1297.  "The first prong requires nothing less than an immediate emergency."  *United States v. Rice*, 214 F.3d 1295, 1297 (11th Cir. 2000).

Here, the district court did not err in refusing to give Little's requested justification defense instruction.  First, Little did not

show he was under an imminent threat of death or serious injury when he possessed the loaded firearm and used it to shoot the funeral attendees.[1]  In the light most favorable to Little, the evidence showed that approximately 30 funeral attendees had crowded around the white SUV in which Little was a passenger, and that some of these people were hitting and grabbing him.  But there is no evidence that any members of this crowd had either melee weapons or firearms, or other evidence suggesting that Little faced the type of "extraordinary" and imminent danger of deadly harm that would justify his possession of ammunition.  *See Rice*, 214 F.3d at 1297–99 (stating that "generalized danger" is not enough).

In support of his claim that he was under attack at the time he handled the gun, Little improperly relies on events that occurred *in response to* his possession or use of that weapon.  He cites the testimony of Debra Bonner, a funeral attendee who said she hit Little in the face before the gunfire.  But Bonner testified that she hit Little "out of fear for [her] life" because Little had "stuck the gun out of the window," meaning Little already possessed the ammunition when Bonner struck him.  Similarly, Little cites his sister's testimony that, after the initial gunshots, she heard someone yell to "kill that m—f—," and she saw a man fire back at and hit the SUV as it fled.  Again, though, these events occurred after Little had used the gun, so they are not probative of the dangers he faced before wielding it.

---

[1] The government does not rely on a theory of constructive possession of the ammunition in the vehicle before Little handled the gun.

Plus, as the district court reasoned, Little cannot show that he did not negligently or recklessly place himself in a situation where he would be forced to engage in criminal conduct. *See Deleveaux*, 205 F.3d at 1297. The evidence is unrebutted that Little instigated the confrontation that led to his possession and use of the ammunition. Little disrupted a memorial service and threatened to kill the attendees. He then traveled to the cemetery, played loud music, and refused to leave when asked, disrupting the graveside service and further inflaming the situation. So insofar as the need for a gun or ammunition was present, Little negligently or recklessly placed himself in that situation by making threats of violence and triggering a confrontation at a time of grief and raw emotions. The court correctly declined to give an instruction for this reason alone.

That leads to the third and fourth prongs of the test, namely that Little still had "reasonable legal alternative[s] to violating the law" that would have "avoid[ed] . . . the threatened harm." *Deleveaux*, 205 F.3d at 1297. He could have, among other things, simply left the area after being escorted from the funeral service, or when he was first asked to leave the cemetery, before hostilities began to rise, or even at the time he grabbed the gun. There is no evidence that Little was being prevented from leaving, even if there were multiple people surrounding the vehicle, nor does Little claim as much on appeal.

Because there is insufficient evidence that Little faced the type of "extraordinary circumstances" that could excuse his

criminal conduct, *see Deleveaux*, 205 F.3d at 1297–98, the district court properly refused to instruct the jury on a justification defense.

**III.**

Little next argues that the district court erred at sentencing by applying the cross reference in U.S.S.G. § 2K2.1(c)(1)(B). We review the district court's application and interpretation of the Sentencing Guidelines *de novo*, and its underlying factual findings for clear error. *United States v. Foley*, 508 F.3d 627, 632 (11th Cir. 2007).

Ordinarily, a defendant convicted of unlawful possession of a gun or ammunition has their offense level calculated under § 2K2.1. Applying that guideline, the probation officer in the presentence investigation report ("PSR") calculated a total offense level of 18, a criminal history category of V, and a resulting guideline range of 51 to 63 months in prison.

But, under § 2K2.1(c), "[i]f the defendant used or possessed any firearm or ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense," and "death resulted," the cross reference directs courts to apply "the most analogous offense guideline from Chapter Two, Part A, Subpart 1 (Homicide)," if that would result in a greater offense level. U.S.S.G. § 2K2.1(c)(1)(B). The district court used the cross reference to apply the guideline for second-degree murder, § 2A1.2, yielding an offense level of 38 and a resulting guideline range of 360 months to life.

We have not addressed the meaning of the phrase "cited in the offense of conviction" in the cross reference. Little maintains

that the cross reference did not apply because "no specific firearm or ammunition was 'cited in' the indictment or the offense of conviction."   The government responds that "[t]he question is not whether the indictment specifically alleges that the ammunition was used in a crime that resulted in death; rather, the question is whether the evidence supports the finding that the same ammunition charged facilitated another crime."   *See, e.g.*, *United States v. Edger*, 924 F.3d 1011, 1014–15 (8th Cir. 2019) ("[W]hether a firearm is 'cited in the offense of conviction' depends on whether the firearm formed the basis for the conviction, not whether the firearm was specifically identified in the charging document.").   The district court reasoned that the cross reference applied because, even though the indictment was silent, the evidence at trial established that Little used the ammunition he was convicted of possessing to kill one person and wound three others.

Ultimately, though, we need not determine whether the district court erred in applying the cross reference because even if the district court erred, any error was harmless.   The court expressly stated that, even if it had resolved the guideline issues in Little's favor, it still "would have varied up to a sentence of 120 months." And the court explained in detail its reasons for concluding that a sentence of 120 months was appropriate, finding that Little had an "extensive" and "escalat[ing]" criminal history, that he had been "undeterred by previous periods of incarceration," and that his conduct in this case reflected a "complete and utter disregard for the safety of others and for human life," making him a danger to the community.

"Under our precedent, we need not review [a sentencing] issue when (1) the district court states it would have imposed the same sentence, even absent an alleged error, and (2) the sentence is substantively reasonable."[2] *United States v. Grushko*, 50 F.4th 1, 18 (11th Cir. 2022) (cleaned up). Our rationale for this policy is to avoid pointless reversals. *United States v. Keene*, 470 F.3d 1347, 1349–50 (11th Cir. 2006). Thus, "[r]emand is not appropriate if we determine that the district court's error did not impact its ultimate sentence *and* the ultimate sentence is substantively reasonable." *Grushko*, 50 F.4th at 18–19 (emphasis in original).

Here, any error in applying the cross reference was harmless. The district court expressly stated that, even if the cross reference did not apply, the court would have imposed the same sentence of 120 months, the statutory maximum, given Little's criminal history and the severity of the conduct proved at trial. *See Goldman*, 953 Fl3d. at 1221; *Keene*, 470 F.3d at 1349–50. And the ultimate sentence is substantively reasonable, a point Little does not contest. Little used the ammunition he possessed to kill someone and wound three others at a funeral service. He also has an extensive criminal history. "Given the great discretion that the district court enjoys in sentencing, we cannot say that we are left with the definite and firm conviction that the district court committed a clear

---

[2] While Little appears to believe our precedent on this point is wrongly decided, it is binding on us as a panel. *United States v. Vega-Castillo*, 540 F.3d 1235, 1236 (11th Cir. 2008) ("[W]e are bound to follow a prior binding precedent unless and until it is overruled by this court *en banc* or by the Supreme Court.") (quotation marks omitted).

error of judgment in weighing the § 3553(a) factors." *United States v. McLellan*, 958 F.3d 1110, 1117 (11th Cir. 2020) (quotation marks omitted).  We thus decline to "send the case back to the district court since it has already told us that it would impose exactly the same sentence, a sentence we would be compelled to affirm." *Keene*, 470 F.3d at 1350.

For these reasons, we affirm Little's conviction and sentence.

**AFFIRMED.**