**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 25-10882

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

VANSHUN TRAYWICK,

*Defendant-Appellant.*

————————————————

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:23-cr-00309-ECM-SMD-2

————————————————

Before JORDAN, BRANCH, and KIDD, Circuit Judges.

PER CURIAM:

Vanshun Traywick appeals his total sentence of 288 months' imprisonment following his conviction for conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine

and conspiracy to distribute and possess with intent to distribute cocaine. He argues that the district court erred in sentencing him as a career offender because the instant conspiracy convictions did not qualify as controlled substance offenses for purposes of the career offender enhancement. After review, we affirm.

## I.    Background

In 2023, a grand jury indicted Vanshun Traywick, and others, on drug-related charges. As relevant here, Traywick was charged with conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine (Count 1), and conspiracy to distribute and possess with intent to distribute cocaine (Count 3) based on conduct that occurred in 2020. Traywick pleaded not guilty and proceeded to a jury trial.

Testimony at trial established that from August 17, 2020, through October 18, 2020, the Drug Enforcement Administration ("DEA") intercepted through a wiretap multiple communications between Traywick, and codefendants Michael Golden, and Rufus Flanagan regarding cocaine. Golden lived in Texas and obtained cocaine from the cartels in Mexico and sold it to "[m]ajor suppliers" in the United States. Golden supplied cocaine to Traywick who was a cocaine distributor in Alabama. Flanagan served as a courier to deliver the cocaine. In October 2020, Golden gave Flanagan a kilogram of cocaine (worth $40,000) to deliver to Traywick. Law enforcement conducted a traffic stop of Flanagan and seized the cocaine. Prior to this incident, Golden had supplied Traywick with a kilogram of cocaine on a couple of occasions.

Additionally, in October 2020, the DEA intercepted calls between Traywick and codefendant Deneco Nettles discussing Traywick's purchase of cocaine from Nettles. As a result of the call, law enforcement conducted surveillance at 1471 Foster Street, which was known to law enforcement as Traywick's "trap house" where he was known to keep and distribute drugs. They observed Nettles's car arrive at the residence while Traywick's car was there. The next day, Nettles and Traywick exchanged text messages about how much money Traywick gave Nettles. The jury convicted Traywick on both conspiracy counts.

Prior to his sentencing hearing, a probation officer prepared a presentence investigation report ("PSI") for Traywick using the 2024 Sentencing Guidelines Manual. The probation officer determined that Traywick qualified as a career offender under U.S.S.G. § 4B1.1(a)[1] because the instant conspiracy convictions

---

[1] The career offender provision provides that:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). The guidelines in turn define a controlled substance offense as:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . .

were controlled substance offenses, and Traywick had at least two prior felony convictions that qualified as controlled substance offenses. The career offender enhancement increased Traywick's base offense level from 24 to 34.

Beginning at age 18, Traywick had a lengthy criminal history in Alabama involving primarily drug-related offenses, including: (1) a 1997 conviction for possession of a controlled substance; (2) a 1999 conviction for possession of cocaine; (3) a 1999 conviction for possession of marijuana; (4) a 2002 conviction for possession of marijuana; (5) a 2003 conviction for possession of a controlled substance and possession of marijuana; (6) a 2003 conviction for two counts of distribution of a controlled substance; (7) a 2004 conviction for possession of marijuana; (8) a 2007 conviction for possession of marijuana and carrying a pistol without a license or permit; (9) a 2011 conviction for distribution of cocaine; (10) a 2016 conviction for conspiracy to distribute a controlled substance; and (11) a 2016 conviction for four counts of distribution of a controlled substance. In addition to the drug-related convictions, Traywick also had a conviction for third-degree assault and several

---

prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense . . . .

*Id.* § 4B1.2(b)(1). Further, the guidelines expressly provide that the term "controlled substance offense" includes "conspiring to commit any such offense." *Id.* § 4B1.2(d).

convictions for domestic violence.  His resulting criminal history category was VI.  Accordingly, with a base offense level of 34 and a criminal history category of VI, his advisory guidelines range was 262 to 327 months' imprisonment.  He faced a statutory maximum term of 40 years' imprisonment.

Regarding Traywick's background, the PSI indicated that Traywick was 45 years old, and an only child who was raised in a loving and supportive home with both parents.  He dropped out of school in the ninth grade.  He "reported a history of substance abuse, specifically marijuana, ecstasy, and methamphetamine."  He began using marijuana and drinking alcohol at 16 years old and began using ecstasy at 45 years old, continuing to use narcotics until as recently as 2 months prior to the interview for the PSI.

Traywick objected to the career offender enhancement, arguing that the instant conspiracy convictions were inchoate crimes and, under this Court's decision in *United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023) (en banc), inchoate crimes are excluded from the career offender provision's definition of controlled substance offenses.[2]  He asserted that without the career offender

---

[2] In *Dupree*, we held that, in light of the Supreme Court's decision in *Kisor v. Wilkie*, 588 U.S. 558 (2019), we may not defer to the commentary in the sentencing guidelines unless the text of the guideline is itself "genuinely ambiguous." *Id.* at 1274–76.  Thus, we explained that, although the commentary to § 4B1.2 stated that the term "controlled substance offense" included inchoate offenses, because the text of § 4B1.2 itself unambiguously excluded inchoate offenses, we could not rely on the commentary. *Id.* at 1277–79.

enhancement, his base offense level would be 24 and his guidelines range would be 100 to 125 months' imprisonment.

The probation officer responded that both the 2024 guidelines in effect at the time of sentencing and the 2018 guidelines in effect when Traywick committed the underlying conspiracy offenses defined "controlled substance offense" to include conspiracy offenses. The probation officer acknowledged that we held in *Dupree* that the definition of "controlled substance offense" in the guidelines did not include inchoate offenses, but *Dupree* was issued after Traywick committed the instant offenses in 2020 and was not retroactively applicable. Moreover, post-*Dupree*, the Sentencing Commission had amended the definition of a "controlled substance" to expressly include inchoate offenses, and Traywick was sentenced after the amendment went into effect.

At sentencing, Traywick maintained that in light of *Dupree* his conspiracy convictions could not qualify as controlled substance offenses. The district court pointed out that the *Dupree* decision was not retroactive, and that post-*Dupree*, the Sentencing Commission amended the definition of controlled substance offense to include inchoate offenses. Traywick maintained that *Dupree* should be applied retroactively, and that not applying it to his case resulted in an ex post facto violation. The district court explained that there was no ex post facto violation because both the 2018 guidelines in effect at the time Traywick committed the offenses and the 2024 guidelines in effect at the time of sentencing included inchoate offenses in the definition of a controlled

25-10882                Opinion of the Court                7

substance offense.    The district court acknowledged that, if Traywick had committed the conspiracy offenses after the *Dupree* case issued in 2023, then he would have been entitled to its protection, but he did not.    Accordingly, the district court overruled the objection and adopted the guideline calculations in the PSI.

Alternatively, Traywick argued that the district court should exercise its discretion and vary downward from the guidelines range based on the 18 U.S.C. § 3553(a) sentencing factors.    He emphasized that he was the father of nine children,[3] and he had played an active role in their upbringing physically, emotionally, and financially.    He argued that he was "more than what his criminal history and his criminal past" showed, noting that he was an active member of the community and participated in community outreach to help "keep kids out of gangs and out of the drug game," and assist kids without father figures in their lives. Traywick emphasized that he had numerous family members present for the hearing to support him.    Additionally, he argued that because he was 46 years' old, if the court were to impose a sentence consistent with the career offender enhancement, it would be "tantamount to a life sentence."

Traywick's daughter testified that Traywick had been in and out of her life as a child due to periods of time when he was in jail, but that she and her father's relationship had really started to grow

---

[3] We note that Traywick's PSI indicated that he had eight not nine children.

after she graduated high school. She explained that he helped support her when she got pregnant with her son. She stated that the possibility that Traywick could serve 20 years in prison was "absurd" because it would keep him away from his grandchildren, and that "he had already learned his lesson" and was "reformed now."

Traywick then made a statement, explaining that he had been "out there doing the right thing," and he had not "seen any drugs . . . touched any drugs or none of that." He explained that he was getting ready to "lose [his] life [for] something [he] never did. [He] didn't see nothing. [He] ain't agreed to nothing."

The government argued that a 300-month sentence was appropriate because, even if Traywick had contributed in positive ways to the community via acts of community service, he had done "a lot of harm to the community by distributing drugs into [the] community for two decades." The government emphasized that, even in cases where Traywick had received a significant sentence, he had never served more than two years before being paroled, and then he continued to violate the law. Furthermore, he was on parole for conspiracy to distribute cocaine and for four counts of distribution of a controlled substance when he committed the underlying conspiracy offenses. Thus, the government argued that Traywick's criminal history demonstrated that he had no "respect for the law." Finally, the government argued that there was no reason for Traywick to have chosen the path in life that he did

given his upbringing and that he had proven time and time again that he was not a benefit to society.

Traywick argued that his criminal history needed to be balanced against the fact that between the underlying offenses in 2020 and the 2023 trial, he had made a lot of progress and really "got the picture" and "was on the straight path."[4] And he wanted to change his ways, so that he could be there for his grandchildren. Accordingly, he requested a sentence of 125 months' imprisonment.

The district court sentenced Traywick to 288 months' imprisonment on Count 1 and 240 months' imprisonment on Count 3 to be served concurrently, followed by five years' supervised release. The district court explained that this sentence was appropriate based on the § 3553(a) factors, particularly given the "extremely serious" nature of the underlying drug conspiracies involving large amounts of cocaine, and his "extensive criminal history involving the distribution of drugs and violent acts." The court noted that, even without the career offender designation, Traywick still had the highest criminal history category possible, and he had committed the offenses while on parole for other drug charges, demonstrating a lack of respect for the law. The court concluded that he was a danger to the community and that a lengthier sentence was necessary to provide adequate deterrence.

---

[4] The government, in turn, disputed the contention that Traywick was on the straight path or desired to change his ways, noting that he knew about the warrant for his arrest in 2023 and evaded law enforcement for about a month.

Finally, the court explained that even if it had sustained Traywick's objections to the PSI, it would have varied upward to a sentence of 288 months for the reasons previously provided. Traywick objected to the sentence. This appeal followed.

## II.    Discussion

Traywick argues that, in light of *Dupree*, the district court erred in concluding that the underlying conspiracy offenses qualified as controlled substance offenses for purposes of the career offender guideline enhancement. The government, in turn, argues that (1) the district court properly concluded that Traywick qualified as a career offender; and (2) even assuming the district court erred, any error was harmless given the court's statement that it would impose the same sentence even if it had sustained Traywick's objections.

Generally, we review the district court's determination that a defendant qualifies as a career offender *de novo*. *United States v. Ott*, 166 F.4th 116, 118 (11th Cir. 2026). However, "we need not review [a sentencing] issue when (1) the district court states it would have imposed the same sentence, even absent an alleged error, and (2) the sentence is substantively reasonable." *United States v. Goldman*, 953 F.3d 1213, 1221 (11th Cir. 2020) (citing *United States v. Keene*, 470 F.3d 1347, 1349 (11th Cir. 2006)). Thus, when, as here, the district court states that, even if it had sustained the defendant's objection, it would have imposed the same sentence, we assume there was an error, adjust the guidelines range accordingly, and analyze whether the sentence would be

substantively reasonable in light of the revised guidelines range. *Keene*, 470 F.3d at 1349. "Our rationale for this policy is to avoid pointless reversals and unnecessary do-overs of sentence proceedings." *United States v. McLellan*, 958 F.3d 1110, 1116 (11th Cir. 2020) (quotations omitted).

Here, it is unnecessary for us to address Traywick's challenge to the career offender enhancement because the district court explicitly stated that it would have imposed the same sentence even if it had sustained Traywick's objection. We therefore assume that the career offender enhancement was erroneous and that the correct guidelines range was 100 to 125 months imprisonment as Traywick argued below, and we determine whether his 288-month sentence was nevertheless substantively reasonable. *Keene*, 470 F.3d at 1349.

We review the substantive reasonableness of a sentence under a deferential abuse of discretion standard, asking whether the sentence is reasonable in light of the totality of the circumstances. *Gall v. United States*, 552 U.S. 38, 51 (2007). A district court "imposes a substantively unreasonable sentence only when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015) (quotations omitted). "A district court commits a clear error of judgment when it weighs the § 3553(a) sentencing factors unreasonably." *United States v. Butler*,

39 F.4th 1349, 1355 (11th Cir. 2022).  The burden rests on the party challenging the sentence to show "that the sentence is unreasonable in light of the entire record, the § 3553(a) factors, and the substantial deference afforded sentencing courts."  *Rosales-Bruno*, 789 F.3d at 1256.

The district court must issue a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of § 3553(a)(2), which include the need for a sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter criminal conduct, and protect the public from future criminal conduct.  18 U.S.C. § 3553(a)(2).  In determining the appropriate sentence, the district court must also consider the "nature and circumstances of the offense and the history and characteristics of the defendant"; the guidelines range; the "kinds of sentences available"; "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and "the need to provide restitution."  *Id.* § 3553(a)(1), (3)–(4), (6)–(7).  When evaluating the history and characteristics of the defendant, a court may properly consider a defendant's previous offenses, even where those offenses are already part of the calculation of his guidelines range. *See United States v. Williams*, 526 F.3d 1312, 1324 (11th Cir. 2008).

The weight given to a particular § 3553(a) factor "is committed to the sound discretion of the district court," and it need not give "equal weight" to the § 3553(a) factors.  *Rosales-Bruno*, 789 F.3d at 1254 (quotation omitted).  "We will not second guess the

weight given to a § 3553(a) factor so long as the sentence is reasonable under the circumstances." *Butler*, 39 F.4th at 1355.

"Upward variances are imposed based upon the § 3553(a) factors." *Id.* No presumption of reasonableness or unreasonableness applies to a sentence that lies outside the advisory guidelines range. *Id.* "When imposing a variance, a district judge must give serious consideration to the extent of any departure from the [g]uidelines and must explain her conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." *Id.* (alteration adopted) (quotations omitted). In reviewing the reasonableness of such a sentence, we "may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall*, 552 U.S. at 51.

We will "vacate the sentence if, but only if, we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (quotations omitted).

Traywick's sentence is substantively reasonable even considering the lower guidelines range. The district court explained that it considered the guidelines range and the § 3553(a) factors and determined that a 288-month sentence was warranted based on the "extremely serious" nature and circumstances of the

instant conspiracy offenses, and Traywick's unchanged conduct as evidenced by his drug-related criminal history spanning two decades. The district court further explained that the sentence was necessary to promote respect for the law, deter Traywick from future criminal conduct, and protect the community. These reasons reflect the purposes of § 3553(a) and are supported by the record. At the time of sentencing, Traywick was only 46 years old and yet he had at least 20 convictions spanning two decades, the majority of which were drug related. Moreover, he committed the instant conspiracy offenses while on parole for conspiracy to distribute a controlled substance and four substantive counts of distribution of a controlled substance. "Courts have broad leeway in deciding how much weight to give to prior crimes the defendant has committed, and placing substantial weight on a defendant's criminal record is entirely consistent with § 3553(a) because five of the factors it requires a court to consider are related to criminal history." *United States v. Riley*, 995 F.3d 1272, 1279 (11th Cir. 2021) (alteration adopted) (quotations and citation omitted). Based on this record, we conclude that the district court acted within its discretion in giving more weight to certain sentencing factors over others, and "[w]e will not second guess the weight" the district court gave the § 3553(a) factors. *Butler*, 39 F.4th at 1355.

Furthermore, the court provided sufficient, compelling justifications for the chosen sentence. *See Rosales-Bruno*, 789 F.3d at 1254. Indeed, we have repeatedly affirmed sentences as substantively reasonable that include major upward variances for defendants with significant criminal histories. *See, e.g.*, *United States*

*v. Grushko*, 50 F.4th 1, 18–21 (11th Cir. 2022) (affirming under a *Keene* analysis a 145-month sentence as substantively reasonable when the guidelines range was 75–87 months); *United States v. Overstreet*, 713 F.3d 627, 634, 636–40 (11th Cir. 2013) (affirming a 420-month sentence where the guidelines range was 180–210 months); *United States v. Shaw*, 560 F.3d 1230, 1232, 1237–41 (11th Cir. 2009) (affirming statutory maximum 120-month sentence where the guidelines range was 30–37 months); *United States v. Turner*, 474 F.3d 1265, 1273, 1280–81 (11th Cir. 2007) (affirming 240-month sentence when guidelines range was 51–63 months).

Finally, we note that Traywick's sentence is well below the statutory maximum of 40 years' imprisonment, which is another indicator of reasonableness. *See United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008) (explaining that a sentence that is well below the statutory maximum is an indicator of reasonableness). Accordingly, we are not "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Irey*, 612 F.3d at 1190 (quotations omitted). Consequently, we conclude that Traywick's sentence is substantively reasonable, and we affirm.

**AFFIRMED.**